### GOLDTHWAITE & TARLTON *vs* M'WHORTER.

1. Generally, a factor, not restrained by instructions to the contrary, may sell the goods of his principal on credit, and take a note for payment in his own name, without personal responsibility.

2. *Exceptions*, varying the general rule, that a factor may sell the goods of his principal, on a credit, and take a note for payment in his own name, must be shown by the party seeking to charge him, *personally*.

3. That a factor has taken a note in his own name, for the goods of his principal, is not a circumstance, in connection with other from which to infer that the factor designed making the debt his own.

Error to the Circuit Court of Autauga.

This action was assumpsit, by the plaintiffs in error, against Alwyn A. M'Whorter.

The plaintiffs declared in the common counts, for goods, wares and merchandise, for money had and received; and on an account stated; and the defendant plead non-assumpsit, payment, set-off, and a balance due, from plaintiffs to defendant, for cotton sold by them—on which there was issue.

On the trial, in the Court below, a verdict was given in favor of the plaintiffs, for a portion of their demand; and having taken exceptions to the charge of the Court, they prosecuted a writ of error, here.

The bill of exceptions showed, that, on the trial of this cause, the defendant introduced a receipt of the plaintiffs, for fifteen bales of cotton, concluding with these words: " Which is to be accounted for, when sold.          "GOLDTHWAITE & TARLTON,

                         " per A. G. Tarlton."

Evidence was offered, to prove, that the plaintiffs' agents in New York, sold the cotton there; and, for a part of the proceeds, took a note from the purchaser, including the same and other dues, in their individual names.

Evidence was also introduced by the plaintiffs, to prove that A. G. Tarlton, who signed the aforesaid receipt, exceeded his authority, and worded the receipt contrary to the terms of shipment, which had been stipulated between the plaintiffs and defendant.

Plaintiffs also offered evidence, to prove the custom and usage of merchants relative to shipments of cotton for planters, and the terms and manner of conducting sales, by factors, &c.

The Court charged the jury, that the custom of merchants could not vary the law of the land; but that, in order to enable them to interpret the contract of shipment, according to the true intent of the parties, as regulated by commercial usages, they could have reference to such established usages, to determine whether the factors had used ordinary prudence, in making the sale; and that the admitted fact, of the agents or factors, who sold the cotton, in New York, having taken the note for the proceeds, in their own names, was a circumstance, in connection with other facts in evidence, which they might take into consideration, in determining whether or not the agents intended to make the debt their own; that the consequence of so taking the note, was not a question of law; that the Court did not recognise any principle of law, that particularly authorised that mode of dealing, or directed in whose name the note should be taken. But, if the factors had con-

ducted the business according to common usage, and used ordinary prudence, they were not responsible; if otherwise, they might be.

The Court also instructed the jury, that, in as much as evidence had been offered to prove, that the person who gave the aforesaid receipt, had exceeded his authority, the jury might take into consideration the language of the receipt, as also the oral testimony, to determine the intent of the parties, in relation to the terms of the shipment; and whether the plaintiffs had absolutely promised to pay for the cotton, when sold, or merely to account for the proceeds.

*Goldthwaite*, for the plaintiffs in error—
*Peck*, contra.

LIPSCOMB, C. J.—This was an action, brought by the plaintiffs, against the defendant, for money had and received, for money advanced, &c. On the trial, several points of law were made, and reserved by the bill of exceptions, for the consideration of this Court. We shall only notice those that may have had an influence in the decision of the case.

The bill of exceptions shows, that the defendant introduced a receipt for fifteen bales of cotton, concluding in these words : "Which is to be accounted for, when sold.

(Signed)   " GOLDTHWAITE & TARLETON,
                                "per A. G. Tarlton."

Evidence was introduced, to prove that the plaintiff sold the cotton, in New York, by their agent, and took a note for a part of the proceeds, together with

other sums due to them from the purchaser, in their own individual names.

The plaintiffs offered evidence, that A. G. Tarleton had exceeded his authority, and that the receipt had been differently worded, from the terms of shipment, expressly stipulated between the plaintiffs and the defendant. The plaintiffs also offered testimony, to prove the custom and usage of merchants, in the shipment of cotton, for the planters—and the terms and manner of conducting sales, by factors.

The Court charged the jury, that the custom of merchants could not vary the law of the land; but that, in order to enable them to interpret the contract of shipment, according to the true intent and meaning of the parties, as regulated by commercial usages, they could have reference to such established usages, to determine whether the factor had used ordinary prudence, in making the sale: and, that the admitted fact, of the agents or factors, who sold the cotton in New York, having taken the note in their own names, for the proceeds, was a circumstance, taken in connection with other facts in evidence, which they might take into consideration, in determining whether or not, the agent intended to make the debt his own. That the consequence of so taking the note, was not a question of law. That the Court did not recognise any principle in law that particularly authorised that mode of dealing, or directed in whose name the note should be taken. But, if the factors had conducted the business according to the common usage, and used ordinary prudence, they were not responsible: if otherwise, they might be so.

The most material question, growing out of the bill of exceptions, or so much thereof as has been recited, is as to what is the legal effect of an agent or factor selling the goods of his principal, and taking a note from the purchaser, in his own name.— Does it make him personally responsible; or is it a circumstance, from which any legitimate inference could be·drawn, of an intention to guarantee, or make the debt his own?

In the second volume of Kent's Commentaries, (pages 485, 486 and 487,) the law of factors and principals, is laid down fully, with the accuracy and perspicuity peculiar to the learned author. It is there said, that "a factor or commission merchant may sell on a credit, without any special authority for that purpose." That, it is "now, the well settled usage, that a factor or agent employed to sell, may sell in the usual way, and consequently he may sell on a credit, without incurring risk, provided he be not restrained by his instructions, and does not unreasonably extend the term of credit; and provided he uses due diligence to ascertain the solvency of the purchaser." The author goes on to say, that "a factor is not authorised to sell on a credit, in cases not authorised by usage, without special instructions, such as the sale of stock," which seems to be generally sold for cash only: in fact the sale of stock may well be assimilated to the exchange of money —different kinds of stock being not unfrequently used as money, by the way of exchange, among commercial men.

He says, further, "If a factor, in a case duly authorised, sells on a credit, and takes a negotiable

note, payable to himself, the note is taken in trust, for his principal, and subject to his order; and if the purchaser should become insolvent before the day of payment, the circumstance of the factor having taken the note in his own name, would not render him personally responsible to his principal."

In the case of *Goodenow* vs *Tyler*,[a] the factor had sold the goods of his principal, without any special instructions and taken a negotiable note in his own name, for the purchase money. before the day of payment, the purchaser failed. In this action, the agent was sought to be made personally responsible to his principal. The Court was much embarrassed, from the circumstance of the note being negotiable, and from the long train of decisions in Massachusetts, giving the highest degree of credit to negotiable paper.

But, that able jurist, Chief Justice *Parsons*, in expressing his opinion in the case, uses the following language: "The Court will take notice, as a part of the law merchant, that a factor may sell goods at a reasonable credit, at the risk of his principal, when he is not restrained by his instructions, nor by the usage of the trade."

On the subject of taking a note for the purchase money, he says, "When a factor sells on a credit, he may take from the purchaser some instrument, by which the purchase may appear with the price, and the time of payment, and on which the purchaser may be charged, in an action at law. And it is very clear, that he is not obliged to disclose to the purchaser, the name of his principal. And upon these principles, he may take a negotiable note, payable to

margin note: [a] 7 Mass. R. 36.

5 s. & p.        37

himself; and when the principal lives in a foreign country, it may be more convenient to have the security payable to himself, so that he may sue in his own name."

The Chief Justice, after declaring that it was the uniform custom of Boston, and every other commercial city, in the United States, for factors to take notes in that way, and that it was competent to prove such custom, says, that " my present opinion is, that on general principles of the law merchant, independent of any usage in Boston, the defendant did not make himself personally liable." The Chief Justice considered the only difficulty to arise from previous adjudications, in which a negotiable note had been uniformly treated as payment; but, when it was recollected, that, in this case, the factor was, in part, trustee for the principal, and, as such, held the note, it did not conflict with those decisions.

We are not informed, that Chief Justice *Parsons*, ever charged or expressed a different opinion, on this subject: in fact, his powerful mind was too well instructed, and too familiar with this branch of jurisprudence, to be involved in doubt and difficulty. If, then, it was, as laid down by him, a principle of the law merchant, independent of the custom of Boston, there can be no question, but he would so have declared it, as the law of the Court, without proof of the custom.

It is true, that neither of the other two judges, who concurred with the Chief Justice in the result, went so far as to say that it was authorised by the law merchant, independent of local custom, but they did not dissent from his opinion, and their ac-

quiescence may be inferred from their silence on that point.

It, however, can not be necessary to give to the opinion of this eminent judge, the weight of undisputed authority, that other names should be associated with his. Should we, however, enquire for additional authority, we shall find it in that kindred spirit, Chancellor *Kent*. We have shown, that he has laid it down, as an elementary principle, that a factor may take a note in his own name, without rendering himself, thereby, personally responsible to his principal.

We take it, then, to be a general principle of the law merchant, that a factor, not restrained by his instructions, may sell the goods of his principal, and take a note for the payment, in his own name, without rendering himself personally responsible to his principal : and, if so, it is not a circumstance that may be placed in connection with other facts, to show that the factor intended making the debt his own.— If a factor has sold an article on a credit, that a particular custom would not authorise to be so sold, it is incumbent on his principal, when seeking to charge him personally, to show the exception. When a general rule is established, exceptions to it must be shown, by the party seeking a benefit from such exception. If a factor, under a belief of the solvency of the purchaser, or belief giving a longer credit than custom would justify, the principal must prove it, if he seeks to make him personally responsible.

We believe that the jury should have been instructed, that the law authorised a factor, unrestrained by instructions, to sell on a credit; and, that the

fact of the note having been taken in the name of such factor, was not a circumstance from which they could infer, in connexion with other facts, that the factor intended to make the debt his own. It is not improbable, that a jury, not familiar with commercial usages, might lay hold of this fact, the form of the note, as a prominent index of the intention of the factor, when it ought not to have had any influence on their conclusion. There possibly may have been other facts, independent of this, to have satisfied the jury, that the factor was himself personally liable, but the probablility of their being influenced by a consideration left to them by the charge of the Court, that should have been withheld, is a sufficient ground, it is thought, for reversing the judgment, and giving the parties another hearing.

We do not consider it important to notice the other points presented by counsel. The judgment is reversed and the cause remanded,

SAFFOLD, J., not sitting.